David C. Wright
dcw@mccunewright.com
Richard D. McCune
rdm@mccunewright.com
Mark I. Richards
mir@mccunewright.com
McCUNE WRIGHT AREVALO LLP
3281 E. Guasti Road Suite 100
Ontario, CA  91761
Telephone:  909-557-1250
Facsimile:  909-557-1275

Douglas C. Sohn
dsohn@sohnlaw.com
SOHN & ASSOCIATES
16870 West Bernardo Drive, Suite 400
San Diego, CA  92127
Telephone:  619-237-7646

*Attorneys for Plaintiff Wendy Hightman
and the Putative Class*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | <u>Responsive to Dkt. 09</u> |
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| Old Carco LLC, et al., | : | **Case No. 09-5002 (SMB)** |
| Debtors. | : | |
| | : | Jointly Administered |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| | : | |
| Wendy Hightman, on behalf of herself and all others similarly situated, | : | **Adv. Proc. No. 19-01333 (SMB)** |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -v- | : | |
| FCA US LLC, | : | |
| | : | |
| Defendant. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

**PLAINTIFF WENDY HIGHTMAN'S OPPOSITION TO FCA US LLC'S MOTION TO
ENFORCE THE COURT'S SALE ORDER AND TO DISMISS THE FIRST
<u>AMENDED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

*Page*

I     INTRODUCTION .................................................................................................... 1

II    BACKGROUND .................................................................................................... 2

    A.    Plaintiff's Factual Allegations ............................................................... 2

    B.    Procedural Background.......................................................................... 5

III    ARGUMENT......................................................................................................... 6

    A.    The Sale Order Does Not Bar Hightman's Warranty-Related Causes of Action ... 6

        1.    FCA Assumed Hightman's Written Lifetime Warranty and Must Satisfy Its Contractual Obligations to Repair Hightman's Vehicle ............ 6

        2.    Hightman's Magnuson-Moss Claim Defeats FCA's Motion Because It Is Based on the Same Theory as Her State Law Breach of Warranty Claim .................................................................................................. 10

        3.    Hightman's Good Faith and Fair Dealing Claim also Survives Because Good Faith and Fair Dealing Are Inherent in FCA's Assumed Contractual Responsibilities .................................................................... 10

        4.    A Motion to Dismiss Should Be Denied Where There Is any Legally Cognizable Theory of Recovery .............................................................. 11

    B.    FCA Violated an Independent Duty under the California Unfair Competition Law by Failing to Repair Hightman's Automobile Pursuant to the Lifetime Warranty .............................................................................................. 12

IV    CONCLUSION..................................................................................................... 13

# TABLE OF AUTHORITIES

*Page(s)*

Cases

*A.A. Baxter Corp. v. Colt Indus., Inc.*,
  10 Cal. App. 3d 144 (1970) ............................................................................ 7

*Bank of China v. Chan,*
  937 F.2d 780 (2d Cir. 1991).......................................................................... 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................... 11

*Burton v. Chrysler Grp., LLC (In re Old Carco LLC)*,
  492 B.R. 392 (Bankr. S.D.N.Y. 2013) ..................................................... 8, 11

*Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc.*,
  2 Cal. 4th 371 (1992) .................................................................................... 11

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .................................................................................. 12

*Clemens v. DaimlerChrysler Corp.,*
  534 F.3d 1017 (9th Cir. 2008) ...................................................................... 10

*Cummings v. FCA US LLC*,
  Case No. 5:18-CV-1072 (GTS/TWD), --- F. Supp. 3d ---, 2019 WL 3494733
  (N.D.N.Y. Aug. 1, 2019) .............................................................................. 10

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*,
  209 F.3d 252 (3d Cir. 2000)............................................................................ 8

*Garcia v. Chrysler Grp. LLC*,
  127 F. Supp. 3d 212 (S.D.N.Y. 2015)........................................................... 10

*Hauter v. Zogarts*,
  14 Cal. 3d 104 (1975) ..................................................................................... 7

*Hispanic Ind. Television Sales, LLC v. Kaza Azeca America Inc.*,
  No. 10 Civ. 932(SHS), 2012 WL 1079959 (S.D.N.Y. Mar. 30, 2012) ............. 8

*In re American Express Anti-Steering Rules Antitrust Litig.*,
  343 F. Supp. 3d 94 (E.D.N.Y. 2018) ............................................................ 12

# TABLE OF AUTHORITIES (cont.)

*Page(s)*

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ............................................................. 12

*In re Nexus 6P Products Liability Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ............................................................. 13

*In re Old Carco LLC*,
    No. 09-50002 (SMB), 2017 WL 1628888 (Bankr. S.D.N.Y. Apr. 28, 2017) .................... 9

*In re Personal Comms. Devices LLC*,
    556 B.R. 45 (Bankr. E.D.N.Y. 2016) ................................................................. 8

*In re Revel AC Inc.*,
    909 F.3d 597 (3d Cir. 2018) ............................................................................ 8

*Kaplan v. Lebanese Canadian Bank, SAL*,
    Case No. 08 Civ. 7253 (GBD), --- F. Supp. 3d ---, 2019 WL 4869617
    (S.D.N.Y. Sept. 20, 2019) ....................................................................... 2, 3, 4, 5

*Keegan v. Am. Honda Motor Co.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012) .............................................................. 7

*LJL 33rd Street Assocs. v. Pitcairn Props. Inc.*,
    725 F.3d 184 (2d Cir. 2013) ........................................................................... 11

*McKell v. Washington Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006) ....................................................................... 12

*Orange County Choppers, Inc. v. Olaes Enters., Inc.*,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007) ............................................................... 11

*Parada v. Superior Court*,
    176 Cal. App. 4th 1554 (2009) ......................................................................... 9

*Paularena v. Superior Court*,
    231 Cal. App. 2d 906 (1965) ........................................................................... 7

*Rose v. Bank of Am., N.A.*,
    57 Cal. 4th 390 (2013) .................................................................................... 12

## TABLE OF AUTHORITIES (cont.)

*Page(s)*

*Sanchez v. City of Fresno*,
  914 F. Supp. 2d 1079 (E.D. Cal. 2012)..........................................................11

*Sandoval v. PharmaCare US, Inc.*,
  145 F. Supp. 3d 986 (2015) ...........................................................................10

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) .........................................................13

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
  487 F.3d 89 (2d Cir. 2007)..............................................................................11

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.*,
  212 B.R. 34 (S.D.N.Y. 1997)..........................................................................12

*Wood, Curtis & Co. v. Scurich*,
  5 Cal. App. 252 (1907) .....................................................................................8

Statutes

11 U.S.C. § 363(f)..................................................................................................8

Cal. Bus. & Prof. Code § 17200 .........................................................................12

Cal. Civ. Code § 1670.5.........................................................................................9

Cal. Civ. Code § 1670.5(a) ....................................................................................9

Rules

Fed. R. Civ. P. Rules 12(b)(2) ...............................................................................5

Fed. R. Civ. P. 12(b)(6)..........................................................................................5

# I    INTRODUCTION

1.      In its Motion to Dismiss, Defendant FCA US LLC ("FCA") argues that Plaintiff Wendy Hightman's claims are barred because Hightman posits that a putative term of her Lifetime Limited Powertrain Warranty ("Lifetime Warranty" or "Warranty") is "unconscionable."  FCA posits that an "unconscionable" act is a "bad act," and maintains that it "did not assume liabilities arising out of the bad acts of Old Chrysler."  (Motion, Dkt. No. 9, ¶ 29.)  In other words, FCA concludes that the Court must enforce the Lifetime Warranty's allegedly unconscionable contract term in because of this Court's earlier-entered Sale Order, an order issued to effectuate the sale of Old Chrysler's assets to FCA.

2.      But FCA's argument misunderstands the Sale Order.  FCA's liability derives from voluntarily assuming the warranty obligations related to assets it obtained from Old Chrysler, including the Lifetime Warranties granted to Hightman and similarly-situated vehicle owners. FCA even admits that it assumed Old Chrysler's warranty obligations, at least with regard to the "costs of parts and labor" needed for warranty repairs.  (*See id.*, ¶ 13; *see also id.*, ¶ 27.)  And Hightman seeks damages in the form of the costs of parts and labor necessary to fix her vehicle. Hightman's warranty claims are thus well-pleaded.  She may seek relief for FCA's breach of the Lifetime Warranty, and her related causes of action for breach of the Magnuson-Moss Warranty Act and FCA's violation of the duty of good faith and fair dealing.

3.      The unconscionability of at least one term in the Lifetime Warranty does play a role in this case, but not the role FCA cast for it.  FCA allegedly denied Hightman coverage under the Lifetime Warranty because she failed to have her vehicle inspected consistent with its putative terms.  Her vehicle was inspected, but several months too early for technical compliance.  Thus, FCA denied Hightman's warranty claim not because FCA never adopted the Lifetime Warranty's obligations—to the contrary, FCA had paid for repairs on Hightman's vehicle as late as 2017—but because Hightman failed to satisfy the burdens the Lifetime Warranty supposedly imposed upon her.

1

4.      In light of FCA's position, Hightman asserts that the Lifetime Warranty's inspection clause is unconscionable and, therefore, cannot be enforced against her.  In short, her unconscionability theory is an affirmative defense.  If Hightman is right and the Lifetime Warranty's inspection requirements are unconscionable, they will be void and its remaining terms enforced.  A long line of legal precedent illustrates that affirmative defenses (such as Hightman's unconscionability defense) are not subject to the Sale Order.

5.      Hightman's cause of action under California's Unfair Competition Law (the "UCL") also survives, if for a different reason.  Having assumed the Lifetime Warranty, FCA also assumed all independent duties imposed by applicable statutes, including the Magnuson-Moss Warranty Act and the UCL.  These duties are independent in nature and fall on FCA directly.  To the extent that FCA refuses to honor the warranty, it does so in breach of these independent statutory duties.  Because Hightman alleges a valid breach-of-warranty claim, she further alleges a Magnuson-Moss Act claim which serves as the necessary "unlawful" predicate act to trigger the UCL.

6.      Because the Sale Order demonstrates that FCA adopted Hightman's Lifetime Warranty and does not bar Hightman's unconscionability defense, the Court should deny FCA's motion to dismiss as to Counts 1-3 (Hightman's warranty-related claims) and Count 6 (her UCL claim).[1]

## II      **BACKGROUND**

### A.      Plaintiff's Factual Allegations

7.      In 2007, FCA's predecessor, DaimlerChrysler Motors Company LLC, found itself suffering from falling sales, layoffs, and plant closings.[2]  (First Amended Complaint, Dkt. No.

---

[1]  Hightman does not challenge FCA's motion as to Counts 4 and 5, though she reserves the right to file an amended complaint should additional information come to light supporting such action.

[2]  Hightman's factual background section is taken from the Complaint.  The Court must assume the Complaint's allegations are true for purposes of deciding this motion.  *Kaplan v. Lebanese Canadian Bank, SAL*, No. 08 Civ. 7253 (GBD), --- F. Supp. 3d ---, 2019 WL 4869617, at *3 (S.D.N.Y. Sept. 20, 2019) (holding that the court must assume all "well-pleaded factual allegations" to be true and "draw all reasonable inferences in the non-moving party's favor").

10-5, at ¶ 2.)  In particular, Chrysler-brand automobiles were under increasing fire from consumers for lack of reliability, and dealers were facing overstocked inventories with significantly declining demand.  (*Id.*)

8.      To reverse its flagging financial fortunes and improve public opinion regarding the reliability of Chrysler brands, DaimlerChrysler announced that the company would offer the Lifetime Warranty on new vehicle sales.  (*Id.*, ¶ 4.)  DaimlerChrysler touted the Lifetime Warranty in a national media campaign, symbolized by an infinity symbol bound by four wheels, meant to express to the public that DaimlerChrysler brands were safe and reliable vehicles with a long useful life.  (*Id.*, ¶ 5.)

9.      But there was a hidden catch.  A provision in the small print of the Lifetime Warranty required that vehicles subject to its terms undergo a powertrain inspection within 60 days of each five-year anniversary of the vehicle's in-service date.[3]  (*Id.*, ¶ 7.)  Unless the vehicle's owner obtained the specific inspection within the specific time period, the Lifetime Warranty would be void.  (*Id.*, ¶¶ 7-8.)

10.     Unfortunately, this information was not provided to vehicle owners prior to purchasing their vehicles, which meant they had no opportunity to weigh the value of the warranty offer in light of the Inspection Clause.  (*Id.*, ¶¶ 10-13, 26-27.)  And even when consumers were provided with these terms after they had purchased their vehicles, the Inspection Clause was in fine print and indistinguishable from the many terms surrounding it.  (*Id.*, ¶¶ 7-8.)

11.     Hightman was one beneficiary of the Lifetime Warranty, having purchased a 2007 Jeep Patriot subject to the warranty from a Chrysler dealership in Guam.  (*Id.*, ¶ 25.)  She was

---

[3] The Complaint references this clause as the "Inspection Clause," and this brief will adopt the same terminology.  The Inspection Clause reads as follows: "In order to maintain the Lifetime Powertrain Limited Warranty, the person or entity covered by this Powertrain Limited Warranty must have a powertrain inspection performed by an authorized Chrysler, Dodge, or Jeep dealer once every 5 years.  This inspection will be performed at no charge.  The inspection must be made within sixty (60) days of each 5-year anniversary of the in-service date of the vehicle.  You must have the inspection performed to continue this coverage."  (Dkt. No. 10-5, at ¶ 30.)

told before her purchase that the Lifetime Warranty would cover the vehicle, but she was not given the warranty's specific terms and conditions until after she completed her purchase.  (*Id.*, ¶ 26.)

12.    Meanwhile, in 2009, through a set of transactions overseen by this Court, the current Defendant, FCA, purchased certain assets of the previous Chrysler entity (dubbed "Old Chrysler" or "Old Carco" in this brief).  FCA entered into a Master Transaction Agreement ("MTA") detailing the sale terms.  (Dkt. No. 10-2.)  In the course of purchasing Old Chrysler's assets, FCA obtained certain liabilities related to those assets, among them Old Chrysler's written warranty agreements, including the Lifetime Warranties.  (*Id.* at 8.)  On June 1, 2009, the Court issued an order authorizing the asset sale (the "Sale Order").  (Dkt. No. 10-1.)

13.    In March 2017, Hightman took her vehicle into a local dealership (now in San Diego, California) to remedy a "whining sound" coming from the transmission.  (Dkt. No. 10-5, ¶ 28.)  Maintenance was performed, and the dealership confirmed that the vehicle had undergone a "16-point multi-inspection according to the maintenance interval."  (*Id.*)  FCA—having in the interim purchased many of DaimlerChrysler's assets and assumed its warranty-related liabilities—covered the repairs under the Lifetime Warranty.  (*Id.*)

14.    A year later, Hightman again brought her vehicle into the dealership, this time after the check engine light came on.  (*Id.*, ¶ 29.)  The technicians looked at the car and determined that the engine gasket needed replacing.  (*Id.*)  As before, Hightman expected FCA to cover the repair because the engine gasket is part of the powertrain, and thus covered by the Lifetime Warranty.  (*Id.*)

15.    But FCA denied Hightman's warranty claim this time, asserting that she had not satisfied the technical letter of the Inspection Clause.  (*Id.*, ¶¶ 29-30.)  The problem, FCA explained, was that Hightman had her vehicle inspected at the wrong time—seven months prior to the ten-year purchase date instead of within 60 days of the second 5-year purchase anniversary.  (*Id.*)

16.     Because FCA considered the Lifetime Warranty void and refused to pay for Hightman's repairs, she was forced to pay $2,307.16 to replace the vehicle's engine gasket.  (*Id.*)

17.     Then, a few months later, Hightman again brought her vehicle to the dealership, this time because of a transmission failure.  This time, the transmission repair was estimated at $5,128.87, and FCA again refused to honor the Lifetime Warranty.  (*Id.*, ¶ 31.)  This lawsuit resulted.

**B.     Procedural Background**

18.     On September 24, 2018, Hightman filed a Class Action Complaint in the United States District Court, Southern District of California, alleging six causes of action against FCA.

19.     In her Complaint, Hightman contends that FCA violated the Magnuson-Moss Warranty Act (MMWA), breached the Lifetime Warranty, and violated the doctrine of good faith and fair dealing (Counts I, II, and III) by refusing to cover the cost of repairing and/or replacing her vehicle's failed powertrain components. (*Id.*, ¶¶ 45-71.)

20.     Hightman further contends that Old Chrysler's insertion of the Inspection Clause in connection with its marketing of the Lifetime Warranty violates California's Consumer Legal Remedies Act ("CLRA") (Count IV) and California's False Advertising Law (Count V), and that FCA's use and enforcement of the Inspection Clause to deny coverage under the Lifetime Warranty violates California's Unfair Competition Law ("UCL") (Count VI).  (*Id.*, ¶¶ 72-100.)

21.     On December 13, 2018, FCA filed a motion to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, sought to transfer the matter to this Court to determine whether Hightman could pursue her claims in light of the Sale Order.

22.     On August 10, 2019, the Southern District of California issued an order denying FCA's motions to dismiss without prejudice and transferring the matter to this Court.  This Court docketed the resulting adversary proceeding soon thereafter.  On October 3, 2019, the Court held an initial pretrial conference and invited FCA to file this motion.

5

**III**      <u>**ARGUMENT**</u>

**A.**     **The Sale Order Does Not Bar Hightman's Warranty-Related Causes of Action**

23.     Though FCA argues that all Hightman's causes of action are effectively tort claims and thus barred by the Sale Order, its analysis is flawed. Hightman's causes of action can be divided into two categories. Her first three counts are based on FCA's breach of the express Lifetime Warranty. Having assumed the Lifetime Warranty through operation of the Master Transaction Agreement and Sale Order, FCA must now abide by it. As to FCA's argument that the Sale Order bars its liability because of Hightman's unconscionability argument, the Inspection Clause's unconscionability does not "cause" FCA's liability—it excuses Hightman's alleged non-performance. Affirmative defenses such as unconscionability are not eliminated by a "free and clear" Sale Order, and thus the Sale Order here has no effect on Hightman's claims.

> **1.**     **FCA Assumed Hightman's Written Lifetime Warranty and Must Satisfy Its Contractual Obligations to Repair Hightman's Vehicle**

24.     Hightman's first three causes of action arise because FCA has assumed Old Chrysler's existing express warranties, including the Lifetime Warranty on Hightman's vehicle. FCA cannot disclaim these warranties now—indeed, FCA paid for repairs to Hightman's vehicle as late as 2017. Just because FCA now recognizes that the prospect of repairing older vehicles in perpetuity will be an expensive and burdensome task does not mean it can sweep aside the burdens it voluntarily assumed when it acquired Old Chrysler's assets.

25.     FCA's legal strategy is to recharacterize Hightman's causes of action as something other than what they are, a strategy summarized by FCA's conclusory argument that her claims are "barred by the Sale Order because [FCA] did not assume liabilities arising out of the bad acts of Old Chrysler." (Dkt. No. 9, ¶ 29.) By adopting this formulation, FCA hopes to confuse the Court into believing that Hightman's causes of action are tortious in nature, and thus barred by the limited assumption of liabilities reflected in the Master Transaction Agreement and the Sale Order.

6

26.     But the Sale Order does not bar Hightman's warranty claim.  The Sale Order authorized the transfer of the purchased assets "free and clear of all Claims other than Assumed Liabilities. . . ."  (Dkt. No. 10-1 at 19, ¶ AA.)  The Master Transaction Agreement describes the Assumed Liabilities FCA adopted, a list expressly including "all Liabilities pursuant to product warranties, product returns and rebates on vehicles sold by Sellers prior to the Closing."  (Dkt. No. 10-2 at 19, § 2.08(g).)  And FCA concedes that the warranty claims included in Section 2.08(g) of the Master Transaction Agreement are among those it assumed under the Sale Order, and therefore may be asserted against it in instances of breach.  (Dkt. No. 9, ¶ 13.)

27.     FCA asserts that Hightman's claims are based on "fraud," and insists that the Sale Order bars fraud-based claims, including any damages resulting from fraud.  But breach-of-warranty claims are not fraud claims.  The Lifetime Warranty is a contract.  FCA assumed the contract's liabilities.  Then, several years later when Hightman attempted to repair her vehicle consistent with the Lifetime Warranty's terms, FCA refused her claim.  And Hightman has now sued FCA for breach of the Lifetime Warranty.  This part of the case is, quite straightforwardly, a breach of contract case.[4]  *See Hauter v. Zogarts*, 14 Cal. 3d 104, 117 (1975) (explaining that "express warranties" are "basically contractual in nature"); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 949 (C.D. Cal. 2012) ("An express warranty is a term of the parties' contract.") (citing *A.A. Baxter Corp. v. Colt Indus., Inc.*, 10 Cal. App. 3d 144, 153 (1970)).

28.     Because a warranty is contractual in nature, a warranty claim is subject to all the same elements as a breach of contract claim, albeit in the context of a written warranty.  To recover for a breach of contract claim, the plaintiff must generally plead and prove the existence of an express warranty, a breach of the warranty, causation, and damages.  *Keegan*, 838 F. Supp. 2d at 949 ("To prevail on a breach of express warranty claim, a plaintiff must prove that the seller: "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the

---

[4]  *See Paularena v. Superior Court*, 231 Cal. App. 2d 906, 915 (1965) ("The damages which each set of plaintiffs seek[s] through their [breach of warranty] cause[] of action are dependent upon their affirmance of the existence of a contract.").

promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff.").  These elements are all alleged. There is an express warranty.  Hightman alleges its breach.  And she seeks the damages—the parts and labor damages caused by FCA's failure to honor its warranty and repair Hightman's vehicle—FCA admits it assumed under the Sale Order.  (Dkt. No. 9, ¶ 13.)

29.     Hightman's allegations regarding the Inspection Clause do not convert her contract claims into a tort action.  To succeed on a breach of contract claim—including a warranty dispute—the plaintiff must show that he or she has satisfied the contract's obligations, because the failure of one party to perform a contract excuses the other party's performance.  *See Wood, Curtis & Co. v. Scurich*, 5 Cal. App. 252, 253 (1907) ("One who refuses or fails to perform the conditions imposed on him by the terms of a contract, and shows no excuse for such refusal or failure cannot recover for a breach of the contract by the other party.") (citing cases). Here, FCA denied warranty coverage because Hightman allegedly failed to perform under the exact terms of the Inspection Clause.  (Dkt. No. 10-5, ¶¶ 30-31.)

30.     The flaw in FCA's motion should thus be apparent.  FCA's contract liability does not flow from "bad acts."  It flows from the contractual responsibilities it assumed through the Master Transaction Agreement and the Sale Order.  In turn, Hightman's damages derive from FCA's failure to pay for labor and parts to fix the vehicle pursuant to the Limited Warranty's terms.  These are the liabilities Hightman has put at issue in Counts 1-3.  (Dkt. No. 9, ¶ 13); *see also Burton v. Chrysler Grp., LLC (In re Old Carco LLC)*, 492 B.R. 392, 396 (Bankr. S.D.N.Y. 2013) (interpreting the Section 2.08(g) of the Master Transaction Agreement).

31.     Because Hightman's unconscionability argument is an affirmative defense, the Sale Order has no effect on it.  It has long been recognized that a bankruptcy's court's "free and clear" approval of a sale of assets under Section 363(f) of the Bankruptcy Code does not include affirmative defenses.  *See In re Revel AC Inc*., 909 F.3d 597, 603 (3d Cir. 2018) (citing *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257-64 (3d Cir. 2000)); *In re Personal Comms. Devices LLC*, 556 B.R. 45, 56 (Bankr. E.D.N.Y. 2016); *Hispanic Ind.*

*Television Sales, LLC v. Kaza Azeca Am. Inc.*, No. 10 Civ. 932(SHS), 2012 WL 1079959, at \*5 (S.D.N.Y. Mar. 30, 2012). The same is true in this case. Unconscionability is not subject to this Court's "free and clear" Sale Order.

32.    As such, if Hightman's allegations of unconscionability are proven, it will void the Lifetime Warranty's unconscionable term—the Inspection Clause. *See* Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."); *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1585-86 (2009). If the Inspection Clause is voided and severed from the Lifetime Warranty, FCA will not be able to avoid its liability by arguing that Hightman failed to abide by the technical letter of the Inspection Clause. *See* Cal. Civ. Code § 1670.5. Instead, FCA will be responsible to honor the Lifetime Warranty's terms in the absence of the Inspection Clause.

33.    Indeed, FCA's position would invert the Court's traditional functions as a neutral arbiter. FCA identifies no precedent that would permit this Court to, in effect, order the enforcement of what would otherwise be an unconscionable contract term. Given that unconscionable contract terms are layered with "oppression," "surprise," and "overly-harsh" and/or "one-sided" results,[5] FCA's argument leads to the natural conclusion that the Court can and will empower oppressive and overly-harsh terms and enforce them as a matter of law. No Court could possibly endorse such a result.

34.    In any event, this Court need not decide the substance of Hightman's unconscionability allegations in the context of FCA's motion, as the substance of those allegations are outside this Court's focus on bankruptcy-related matters. *See In re Old Carco*

---

[5] *See, e.g., Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006); *Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 82 N.Y.2d 47, 53 (1993) ("The bedrock of the doctrine of unconscionability is the prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risk.") (omission in original; internal quotation marks omitted).

*LLC*, No. 09-50002 (SMB), 2017 WL 1628888, at *6 (Bankr. S.D.N.Y. Apr. 28, 2017) (refusing to decide questions that "do not implicate the Sale Order or the Old Carco bankruptcy"). It is enough here to establish that the Sale Order does not bar Hightman's contractual causes of action. As a result, Hightman's claim that FCA breached the Lifetime Warranty may proceed.

> **2.    Hightman's Magnuson-Moss Claim Defeats FCA's Motion Because It Is Based on the Same Theory as Her State Law Breach of Warranty Claim**

35.    FCA repeats itself when arguing that Hightman's Magnuson-Moss Warranty Act claim (Count 2) is barred because FCA "did not assume any liabilities based on fraud or fraudulent practices." (Dkt. No. 9, at ¶ 36.) But this argument fails for the same reason as its opposition to Hightman's warranty claim. A Magnuson-Moss Act claim provides a federal forum for warranty violations, but such a claim generally rises or falls with the substance of an accompanying state-law warranty claim. *See Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) (holding that plaintiffs "have stated plausible breach of express warranty claims, and thus "have stated plausible claims under" the Magnuson-Moss Act). Thus, to the extent that Hightman's breach of warranty claim survives, so too does her Magnuson-Moss Act claim. *Cummings v. FCA US LLC*, No. 5:18-CV-1072 (GTS/TWD), --- F. Supp. 3d ---, 2019 WL 3494733, at *17 (N.D.N.Y. Aug. 1, 2019) ("To that effect, claims under [the Magnuson-Moss Act] stand or fall with the express and implied warranty claims under state law."); *Garcia*, 127 F. Supp. 3d at 232; *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 998 (2015) ("When the [Magnuson-Moss Act] claim is premised on borrowed state-law warranty claims, [Magnuson-Moss Act] claims 'stand or fall' with the state-law claims.") (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008)).

> **3.    Hightman's Good Faith and Fair Dealing Claim Also Survives Because Good Faith and Fair Dealing Are Inherent in FCA's Assumed Contractual Responsibilities**

36.    FCA also expands its argument to encompass Hightman's good faith and fair dealing claim (Count 3), which it says is also predicated on Old Chrysler's "bad acts." But FCA again misses the mark. The implied covenant of good faith and fair dealing is an implied clause

found in every contract requiring the parties to act in a manner "although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under the agreement." *Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 559-60 (S.D.N.Y. 2007); *see also LJL 33rd Street Assocs. v. Pitcairn Props. Inc*., 725 F.3d 184, 195 (2d Cir. 2013) ("The implied covenant of good faith and fair dealing bars a party from taking actions 'so directly to impair the value of the contract for another party that it may be assumed that they are inconsistent with the intent of the parties.'") (quoting *Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991)).  Again, FCA admits that it has assumed Old Chrysler's express warranties. (*see* Dkt. No. 9, at ¶ 13), so it follows that FCA assumed all those contractual obligations with an intact, if implied, covenant of good faith and fair dealing.  *See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) ("Under New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of contract performance."); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 371-72 (1992) ("Every contract imposes upon each part a duty of good faith and fair dealing in its performance and its enforcement.").  Indeed, it would be quite out of a character for any court to provide for the assumption of a contract but suspend the responsibilities and burdens of good faith that go with it.  Thus, to the extent that a breach of the implied covenant causes FCA's failure to provide for the cost and parts of labor to repair a vehicle, FCA remains liable under the Sale Order for that breach.  *Burton*, 492 B.R. at 398 ("[FCA] assumed written warranties, limited to the costs of parts and labor, and did not assume any other warranty-related claims.").

### 4.    A Motion to Dismiss Should Be Denied Where There Is Any Legally Cognizable Theory of Recovery

37.    FCA complains that the Sale Order bars various liability and damages theories alleged in the Complaint, and thus these particular theories should be dismissed.  FCA overreads the legal standard here as well.  To survive a motion to dismiss for failure to state a claim, a complaint must contain "either direct or inferential allegations respecting all the material elements" necessary to succeed under "some viable legal theory."  *Sanchez v. City of Fresno*,

914 F. Supp. 2d 1079, 1094 (E.D. Cal. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 562 (2007)); *In re American Express Anti-Steering Rules Antitrust Litig*., 343 F. Supp. 3d

94, 101 (E.D.N.Y. 2018) (holding that it is improper to challenge a theory, as opposed to a cause

of action, in the context of Rule 12(b)(6) motion to dismiss).  As long as Hightman alleges a

viable cause of action through which she can obtain relief, granting a motion to dismiss is

improper.  To the extent that FCA argues its damages are more limited than the Complaint

alleges, those matters should be considered at a future stage of the litigation.  *Id.*; *Wechsler v.*

*Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.,* 212 B.R. 34, 41 (S.D.N.Y. 1997) ("[S]o long as

at least one legally sufficient damage theory exists, a motion to dismiss is directed towards a

cause of action, not to different damage theories that may be asserted under the cause of

action."); *United States v. Priv. Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.*, 793 F. Supp.

1114, 1150 (E.D.N.Y. 1992) (holding that a "complaint may be dismissed if there is no relief

which may be granted on the stated claims").

**B.    FCA Violated an Independent Duty under the UCL by Failing to Repair
Hightman's Automobile Pursuant to the Lifetime Warranty**

38.    Hightman's UCL cause of action also survives FCA's motion to dismiss, but for a

different reason.  The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or

practice."  Cal. Bus. & Prof. Code § 17200.  Because the statute is framed in the disjunctive, "a

business practice need only meet one of the three criteria to be considered unfair competition."

*McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).  One of the criteria for

liability under the UCL is that a business practice is "unlawful"—that is, it violates another

federal or state statute.  *Id.* at 1474-75.

39.    In borrowing from other statutes, the UCL is independently enforceable and

creates its own independent statutory duty to avoid unfair business practices.  *See In re Apple*

*Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 463 (N.D. Cal. 2018) ("The 'unlawful'

prong of the UCL covers 'any business practice that violate[s] an independent statutory duty.")

(quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)); *Rose v.*

*Bank of Am., N.A.*, 57 Cal. 4th 390, 394-95 (2013) (explaining that the UCL borrows violations of other laws and makes them "independently actionable").  FCA asserts that "the entire litigation is premised on the allegation that the term that was not complied with—the inspection requirements—is unconscionable."  (Dkt. No. 9, at ¶ 44.)  This formulation merely repeats FCA's argument that Hightman is seeking "redress for what [Hightman] asserts is an unfair and unconscionable provision in a Limited Warranty issued by Old Chrysler."  (*Id.*)  But the Complaint expressly alleges that FCA's failure to "honor the Lifetime Powertrain Warranty based on the unconscionable Inspection Clause" violates the UCL as well.  It is FCA that refuses to repair Hightman's vehicle, even though it assumed the Lifetime Warranty pursuant to the Sale Order.  And because FCA's failure to repair Hightman's vehicle violates the Magnuson-Moss Warranty Act, that violation is the predicate "unlawful" predicate act Hightman's UCL cause of action.

40.    As a result, the UCL imposes an "independent statutory duty" upon FCA—not only at the time of sale but throughout the life of the warranty—and as a result the Sale Order does not bar Hightman's UCL cause of action.  *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 929 (N.D. Cal. 2018) ("Because the Court has already concluded that [plaintiffs] have stated a claim against Huawei under the Magnuson-Moss Warranty Act, they have also stated a claim against Huawei for violation of the UCL 'unlawful' prong."); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1136-37 (N.D. Cal. 2010).

## IV    CONCLUSION

41.    For the foregoing reasons, Hightman respectfully requests that the Court deny FCA's motion as to Counts 1, 2, 3, and 6 of the First Amended Complaint.

Dated: December 9, 2019                    Respectfully submitted,

                                           */s/ David C. Wright*
                                           David C. Wright
                                           dcw@mccunewright.com
                                           Richard D. McCune
                                           rdm@mccunewright.com
                                           Mark I. Richards

mir@mccunewright.com
**McCUNE WRIGHT AREVALO LLP**
3281 E. Guasti Road Suite 100
Ontario, CA 91761
Telephone:  909-557-1250
Facsimile:  909-557-1275

*Attorneys for Plaintiff Wendy Hightman*
*and the Putative Class*